UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
TEAMSTERS UNION LOCAL                     )
NO. 59,                                   )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )        Civil Action No. 12-11896-PBS
                                          )
BRITTANY DYEING AND PRINTING              )
CORP.,                                    )
                                          )
            Defendant.                    )
_____)

REPORT AND RECOMMENDATIONS ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

November 12, 2013

SOROKIN, C.M.J.

The Plaintiff, Teamsters Union Local No. 59 (the Union), has brought suit against the

Defendant, Brittany Dyeing and Printing Corporation (the Company), seeking to vacate an

arbitration award ostensibly premised upon an interpretation of a collective bargaining

agreement between the Union and the Company.  Docket # 1-1.

Pending is the Union's Motion for Summary Judgment.  Docket # 17.  For the following

reasons, I RECOMMEND that the Court DENY the Union's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed.[1]  The Company is a corporation operating a facility in

New Bedford, Massachusetts which is engaged primarily in the dyeing of textile materials.

_____

[1]  The Union's statement pursuant to L.R. 56.1 of the material facts as to which it
contends there are no genuine disputes is not opposed by the Company, and thus the Union's
facts are deemed admitted.  See L.R. 56.1.

Docket # 32 at ¶ 2.  The Union has represented the production and maintenance

employees at the New Bedford facility for many years.  Id. at ¶ 3.  The Union and the Company

have been parties to various Collective Bargaining Agreements (CBAs) over the course of many

years.  Id. at ¶ 4.

A CBA expired on July 9, 2005, and the Parties initially agreed to extend the CBA to

July 17, 2005.  Id. at ¶ 5.  When a new agreement was not reached, a strike ensued, which ran

from July 17, 2005 to November 1, 2005.  Id.  The Parties then entered into a CBA with effective

dates from July 17, 2005 to June 27, 2009.  Id. at ¶ 6.  In the summer of 2006, the Company

reduced the vacation allotment of all employees with ten or more years of seniority by 29% for

the period they were on strike, with the effect that they received only 71% of their vacation pay.

Id. at ¶ 7.  Also in the summer of 2006, the Company reduced the vacation allotment of all

employees with ten or more years of seniority who missed work during the vacation year

because they were either on layoff or on medical leave.  Id. at ¶ 8.  The Union filed grievances

on behalf of all of the employees affected by these decisions of the Company.  Id. at ¶ 9.

Arbitrator Peter Smola heard the Union's grievances.  At issue in the pending case is the

precedential authority of Smola's decision.  Smola denied the Union's grievance insofar as the

Union sought credit toward the calculation of vacation pay for the period of time the employees

spent on strike.  Id. at ¶¶ 10-11.  In the final paragraph of his decision, Smola granted the

grievances insofar as they sought credit toward the calculation of vacation pay for the period of

time the employees spent on layoff or medical leave.  Id.  Specifically, Smola wrote:

> I find, though, for the above-named employees as to their claim for vacation pay
> to be reinstated for the period of time that they were laid off and/or out on
> medical leave.  The language in Article 11.4 provides for prorating vacation
> benefits in circumstances other than termination for cause or workers'

compensation when an employee takes 'leave' from his employment.  In the case
of these gentlemen and these circumstances, which are non-strike, it is my ruling
that this language is to be interpreted that the layoff period and the medical leave
is [sic] not to constitute a 'leave of employment' as set forth in this section.  The
interpretation for this is bolstered by past practice as set forth by the Union
persuasively.

Docket # 20 at 7.

The Parties subsequently negotiated another CBA which was in effect from June 27,

2009 through June 29, 2013.  Id. at ¶ 12.  In the course of the negotiations, the Company

proposed a CBA provision providing that, "[e]mployees [sic] vacation pay shall be paid

proportionally to time worked in any given vacation period."  Id. at ¶ 13 (citing Docket # 23 at

2).  This proposed language was not included in the 2009-2013 CBA.  Id. at ¶ 14.  Rather,

provisions with respect to vacation pay remained identical to those found in the prior CBA

which Arbitrator Smola had interpreted.  Id. at ¶ 15.

In 2010 and 2011, the Company pro-rated vacation pay for employees with more than

ten years of service who had suffered layoff periods and informed the Union that it intended to

do so again with the vacation payments to be made in June 2012.  Id. at ¶ 16.  The Union filed

grievances which were heard on April 27, 2012 by Arbitrator Paul Walsh.  Id. at ¶ 17.

On August 20, 2012, Arbitrator Walsh issued a decision denying the Union's grievances.

Docket # 1-1.  Walsh, like Smola, began by reciting the relevant CBA provisions, §§ 11.1 and

11.4.  Id. at 6-7.[2]  He summarized the facts and acknowledged the Parties' conflicting arguments.

Id. at 7-8.  He then explained why he concluded that Smola's decision did not control.  Id. at 8.

Thereafter, he analyzed the grievances in light of, inter alia, the terms of the CBA.  Id. at 8-10.

_____

[2]  Citations throughout are to the pagination assigned by the Court's CM-ECF docketing
system, rather than pagination internal to the exhibits themselves.

The Union now seeks to vacate Arbitrator Walsh's decision.

II.     DISCUSSION

        Standard of Review

        A party seeking to vacate an arbitrator's award must satisfy one of the specific grounds

laid out in Section 10(a) of the Federal Arbitration Act.  See 9 U.S.C. § 10(a).  Only one of these

grounds is arguably relevant in this case, namely that "the arbitrators exceeded their powers, or

so imperfectly executed them that a mutual, final, and definite award upon the subject matter

submitted was not made."  9 U.S.C. § 10(a)(4).

        The district court's review of arbitral awards must be "extremely narrow and exceedingly

deferential."  UMASS Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union, 527

F.3d 1, 5 (1st Cir. 2008) (quoting Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir.

2000)).  Arbital awards are "nearly impervious to judicial oversight" because both parties have

contracted to have disputes settled by an arbitrator and therefore it is the arbitrator's view of the

facts and of the meaning of the contract that they have agreed to accept.  Id. (internal citations

omitted).  It is not enough for the party seeking to vacate to show that the arbitrator committed

an error, or even a serious error.  Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662,

671 (2010).  "It is only when [an] arbitrator strays from interpretation and application of the

agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may

be unenforceable."  Id. (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504,

509 (2001) (per curiam) (quoting Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597

(1960))).

        The district court does not sit as a court of appeals to hear claims of factual or legal error

by an arbitrator or to consider the merits of an award.  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).  While the arbitrator may not ignore the plain reading of a contract, a court cannot vacate the award "as long as the arbitrator is even arguably construing or applying the contract."  Id.  "In a case in which the arbitrator purports to interpret the language of a [CBA], a party who seeks judicial review ordinarily must demonstrate that the award is contrary to the plain language of the CBA and that the arbitrator, heedless of the contract language, preferred instead to write his own prescription for industrial justice."  Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 65 (1st Cir. 2000).  A party challenging an award in such circumstance must show that the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact."  Id. at 66 (quoting Local 1445, United Food & Commercial Workers Int'l Union v. Stop & Shop Cos., 776 F.2d 19, 21 (1st Cir. 1985)).

The Union argues that Arbitrator Walsh's award "did not draw its essence from the parties' CBA" because Walsh contradicted Arbitrator Smola's 2006 award (which was interpreting the same contract language) and because Walsh relied upon extrinsic sources such as guidance from the Attorney General's Office.  Docket # 32.

Extrinsic Materials

The Union notes that in the course of his consideration of whether vacation pay is an earned benefit under the CBA, Arbitrator Walsh refers to an advisory opinion issued by the Massachusetts Attorney General's Fair Labor And Business Practices Division.  See Docket # 1-

1 at 8.[3]  The Union asserts that such reference to extrinsic sources is "barred."  Docket # 32 at 12

(citing <u>Bacardi Corp. v. Congreso de Uniones Industriales de P.R.</u>, 692 F.2d 210 (1st Cir. 1982)).

     In <u>Bacardi</u>, the First Circuit found inappropriate and irrelevant the district court's

recitation that the public policy of Puerto Rico provided that "only before clear provisions that

undoubtedly so require, shall the courts exclude the workers or employees from the protections

afforded by the labor laws."  <u>Id.</u> at 213 n.2.  The Court did not, however, vacate the arbital award

on the basis of the utilization of the extrinsic evidence.  Rather, it found that <u>if</u> it could be shown

that the arbitrator's decision had rested solely on the combination of these extrinsic legislative

sources with testimony concerning the negotiation of the CBA (the extent of which it found to be

unclear from the record), then that might be sufficient to show that the arbitrator was not faithful

to the CBA.  <u>Id.</u> at 213.  It further found that this was a matter of disputed fact not amenable to

resolution on summary judgment.  <u>Id.</u>

     The case at hand is different from <u>Bacardi</u> in several respects.  Walsh starts with and relies

upon the text.  Walsh's discussion of the Attorney General's advisory opinion is <u>preceded</u> by his

interpretation of CBA provisions.  He cites the advisory opinion to reinforce that interpretation

(not as a rationale for disregarding the language of the CBA, as was the case in <u>Bacardi</u>).  Walsh

writes: "Is vacation pay an earned benefit?  The CBA indicates that it is.  Generally, employees of

the Company who are employed by the Company for periods of three, five, ten or fifteen years

receive proportionately more vacation pay commensurate with their years of employment."

---

[3]  Walsh notes that, "[t]he Attorney General's Fair Labor And Business Practices
Division advised in 1999 that 'like wages, vacation time promised to an employee is
compensation for services, which vests as the employee's services are rendered.'  The advisory
opinion goes on to note, 'where an employer's policy is ambiguous, the actual time earned by the
employee will be pro-rated according to the time period in which the employee actually works.'"

Docket # 1-1 at 8.  He then describes the Attorney General's advisory opinion (as quoted at note 3, supra).  Thus, Walsh's conclusion that vacation pay is an earned benefit is grounded in an interpretation of the CBA (albeit one buttressed by reference to state law).

Arbitrators may refer to sources outside the CBA.  An arbitrator "is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.  He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement."  United Steelworkers, 363 U.S. at 598 (emphasis added).  As noted in a treatise the Union describes in another context as "the leading treatise on Labor Arbitration" (Docket # 32 at 7), "most arbitrators would agree . . . [that] where the contract provision being interpreted or applied has been formulated loosely, the arbitrator may consider all relevant factors, including relevant law."  Cliftex Corp. v. Local 377, New Eng. Reg'l Joint Bd., Amalgamated Clothing Textile Workers Union, AFL-CIO, CLC, 625 F. Supp. 903, 908 (D. Mass. 1986) (quoting F. Elkouri & E. Elkouri, How Arbitration Works 370 (5th ed. 1985)).

Moreover, Walsh's recourse to the Attorney General's advisory opinion impacted only his determination that vacation pay is an earned benefit – a conclusion which was also reached by Arbitrator Smola in the prior decision which the Union faults Walsh for not following.  See Docket # 20 at 6 ("I find that vacation pay, as gleaned from the relevant contract provisions, and the various treaties and case law that bear on this issue, is an earned benefit and that such a benefit cannot be 'earned' during a time of strike.").  The issue on which Walsh and Smola disagreed (i.e., whether layoffs and medical leaves were leaves of employment) was not informed by Walsh's analysis of extrinsic materials.

<u>Precedential Value of Prior Arbitration Decision</u>

The Union conceded at the hearing on the motion that Walsh was not bound to follow Smola's award as binding precedent.  <u>See</u> Docket # 32 at 5-7 (recognizing <u>Westinghouse Elevators of P.R. v. S.I.U. de P.R.</u>, 583 F.2d 1184 (1st Cir. 1978), as holding that a second arbitrator's decision not to follow a previous arbitrator's holding on the same issue is not in and of itself grounds to vacate); <u>see also, e.g.</u>, <u>Mass. Nurses Ass'n v. N. Adams Reg'l Hosp.</u>, 467 F.3d 27, 29-30 (1st Cir. 2006) ("We have been particularly loath to take too expansive a view of the precedential effect of arbitration awards, emphasizing that this phenomenon is primarily a matter for the arbitrator, not for a court."); <u>but see</u> <u>Derwin v. Gen. Dynamics Corp.</u>, 719 F.2d 484, 491 (1st Cir. 1983) ("Only where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure.").

Rather, the Union argues that Walsh's rationale for not following Smola's holding on the same issue was so faulty that doing so brings Walsh's award within that small group of decisions suitable for reversal under 9 U.S.C. § 10(a).  In his decision, Walsh addressed the Smola decision briefly, stating that:

> The Smola arbitration decision dealt with the pro-ration of vacation time caused by work absence due to strike.  I find no analysis nor examination of the issues underlying layoff/vacation pay other than the language cited by the Union.  Since that grievance dealt with the issue of strike/vacation pay I consider the language to be in the nature of dicta and not controlling the issue of lay off/vacation pay before this Arbitrator.

> Docket # 1-1 at 8.

The Union objects that despite Walsh's statement, Smola's decision indeed contained

8

discussion of the layoff/vacation pay issues – including analysis of the CBA, as well as reference to testimony concerning past practices and the bargaining history between the parties.  Docket # 32 at 9-11.

Plainly, Smola's layoff language was not dicta – he ordered the Company to award more vacation pay for the employees before him for the period of time the employees were on layoff or vacation status.  However, Smola himself confined his decision to the employees before him, writing that, "in the case of <u>these gentlemen and these circumstances</u> . . .  it is my ruling that" a layoff and medical leave was not a leave of employment.  <u>Id.</u> at 7 (emphasis added).  Thus, Smola's decision was not clearly intended to have prospective effect.  <u>See</u> <u>Derwin</u>, 719 F.2d at 491.

In addition, even if Smola's decision became a binding part of the CBA, as the Union contends, Walsh analyzed it along with other relevant provisions of the CBA, drawing his conclusions from an interpretation of the terms "regular employee" and "leaves employment."[4] While Walsh's ruling imposed a different result than Smola had with respect to much the same question, whatever the consequences and costs that may flow from that, the First Circuit has said that "[i]t is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions.  Indeed, an arbitration award is not considered conclusive or

---

[4] Walsh's analysis in the section entitled, "Is a person, laid off from the Company still an employee of that company and entitled to benefits and protections laid out in the CBA?" begins to veer away from the contract language toward "his own brand of industrial justice."  He posits therein general practices – without making reference to any CBA provisions – which are in fact contrary to the language of the CBA at issue.  For example, he asserts that laid-off employees generally fail to retain seniority (Docket # 1-1 at 9), although the CBA provides in Article 7.8 that laid-off employees retain seniority for twelve months (Docket # 35 at 4).  Nonetheless, even in this section of the decision, Walsh looks to the terms of the CBA, as he does throughout his analysis.

binding in subsequent cases involving the same contract language but different incidents or grievances." El Dorado Technical Servs., Inc. v. Union General De Trabajadores de P.R., 961 F.2d 317, 321 (1st Cir. 1992); see also Supervalu, 212 F.3d at 69. Moreover, Walsh determined that Smola's decision exerted no preclusive effect. Thus, the Union has not made the showing necessary under the law to vacate the award.

III.     CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DENY the Plaintiff Union's Motion for Summary Judgment (Docket # 17) and enter judgment confirming the arbitration award.[5]

        /s / Leo T. Sorokin
Leo T. Sorokin
Chief United States Magistrate Judge

---

[5] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).

10